RYAN et al. v. KANAWHA VAL. BANK.

(Circuit Court of Appeals, Fourth Circuit.   November 11, 1895.)

No. 119.

JUDGMENTS—LIEN—WEST VIRGINIA LAWS.
  Under the law of West Virginia, a judgment creditor, in order to reach
the land of the judgment debtor, must file a bill in equity in aid of the
execution, after a return unsatisfied in whole or in part. A judgment is
a lien for 10 years upon the defendant's land, if docketed in the county
where the land lies. Plaintiff secured a judgment against H. in 1878,
which was docketed in three counties. After the return of an execution
unsatisfied, he commenced a suit in equity, in one of the counties, to sub-
ject land of H. in that county to the payment of the judgment. A final
decree was entered in this suit in 1884, leaving the judgment partly un-
satisfied. In 1893, plaintiff commenced a suit to reach lands in the other
two counties where the judgment was docketed, which lands had in the
meantime been sold to third parties. *Held*, that the first suit in equity
was part of and ancillary to the judgment, as a mode of enforcing it, and
kept that judgment alive, not only in the county where it was obtained,
but in all the counties where it was docketed, until the entry of the decree
in the equity suit, so that the 10-year period of limitation did not begin to
run until that date.

Appeal from the Circuit Court of the United States for the Dis-
trict of West Virginia.

This suit was commenced in the United States circuit court of
West Virginia in February, 1893.   It was brought to enforce a judg-
ment which had been obtained by the plaintiff below in the state
circuit court of Kanawha county, W. Va., in 1877.   The property
sought in this suit to be subjected to the said judgment was the
interest held in certain tracts of land in Clay and Nicholas counties,
W. Va., by Lewis G. Huling, one of the defendants below.

F. B. Enslow (of Simms & Enslow), for appellants.

J. F. Brown (of Brown, Jackson & Knight; E. L. Buttrick on the
brief), for appellee.

Before SIMONTON, Circuit Judge, and HUGHES, District Judge.

HUGHES, District Judge.   Under the law of West Virginia, a
plaintiff, after obtaining judgment for his debt, can issue a writ of
fieri facias against the personalty of the defendant.   If the execu-
tion be returned unsatisfied, in whole or in part, and he wishes to
reach the land of the defendant, he must file a bill in equity in aid
of the execution.   The judgment which he has obtained is a lien
upon the defendant's land in any county in the state, although, as
against a purchaser of the land without notice, the lien does not
hold unless it be docketed in the county in which the land lies.   In
1877, the plaintiff, appellee in this cause, recovered judgment against
Lewis G. Huling et al., in Kanawha county, for $3,540.72.   This judg-
ment was docketed in 1878 in Kanawha and Clay counties, and in May,
1880, in Nicholas county.   In these two last counties the defendant Hul-
ing owned lands.   The docketing of the judgment in Clay and Nich-
olas counties gave notice that the original suit, in which judgment

had been entered, was in Kanawha county. The writ of fieri facias issued on the judgment in April, 1878, having been returned "No property found," the plaintiff, in October, 1878, brought its bill in equity in Kanawha county to subject lands in that county to its judgment. The case was referred, in June, 1880, to a commissioner. His report was filed and confirmed in April, 1881. Sale of the lands in Kanawha county was ordered, and sale of them was made and confirmed in October, 1884. On the 22d of September, 1880, Huling conveyed the lands in Clay and Nicholas counties to the vendors of the defendant, appellant in this suit, who were thus purchasers pendente lite, in respect to the chancery suit in Kanawha county. There can be no doubt but that the statute of limitations began to run against the original judgment, at its date, in 1878, as to the lands in Clay and Nicholas counties. But the question in the case is whether the chancery suit, begun in October, 1878, and finally ended in October, 1884, brought to complete the relief of the judgment, was a continuation of the judgment, and kept it alive, as against the running of the statute of limitations, until the date of the final decree. The record shows that the latter suit, brought to enforce the judgment, resulted in satisfying it, in part, as late as October, 1884, leaving the residue of the amount of the original judgment unpaid. The chancery proceedings were a part of and ancillary to the judgment at law, were a practical mode of enforcing it, and kept it alive. The decree in chancery was a continuation of the judgment, and continued it in force up to the date when it was entered, kept it alive, not only in Kanawha county, where it was obtained, but in every county of the state in which it was docketed. The docketing in Clay and Nicholas counties gave notice, there as well as in Kanawha county, of the Kanawha judgment, and of all proceedings taken in Kanawha county to enforce it. Just as a successful appeal would have held the statute of limitations in abeyance, so did these proceedings. It follows that the running of the statute of limitations, which was unquestionably suspended in Kanawha county until October, 1884, was also suspended in Clay and Nicholas counties, and that the limit of the statute was not reached until October, 1894, 10 years after the decree in chancery. The defendant's (appellant's) vendors, having purchased the Huling lands in Clay and Nicholas counties in September, 1880, did so pendente lite, with constructive notice of the judgment which had been docketed in those counties, and of all proceedings taken in Kanawha county to enforce, keep alive, and extend that judgment. The docketing in Clay and Nicholas counties put all purchasers of the lands there on inquiry; and the maxim "vigilantibus non dormientibus jura subveniunt" applies. The decision of the court below must therefore be affirmed.