**In the Matter of Philander P. CLAXTON, III, Bankrupt.**

**Richard A. BARTL, Receiver in Bankruptcy, Plaintiff,**

v.

**G. WEINBERGER & CO., Defendant.**

**Bankruptcy No. 79–684–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Aug. 8, 1983.

Richard J. Stahl, Annandale, Va., for bankrupt.

Richard A. Bartl, Alexandria, Va., trustee in bankruptcy.

Robert O. Tyler, Alexandria, Va., for Richard A. Bartl.

George F. Griffith, Fairfax, Va., for G. Weinberger & Co.

Ronald L. Walutes, Annandale, Va., trustee in bankruptcy, for Watkins Corp.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

In this action, Richard A. Bartl, Receiver [1] (hereafter the "Trustee") seeks a determination that the "judgment lien" held by defendant G. Weinberger & Co. ("Weinberger") is fraudulent as to creditors of the bankruptcy estate and is, therefore, null and void.

Weinberger initially obtained a judgment in the amount of $208,812.50 against Claxton, III in a Pennsylvania court in November of 1978. The defendant domesticated this judgment by entry of a consent judgment in the Circuit Court of Fairfax County, Virginia, on June 5, 1979. Claxton, III was the subject of an involuntary petition in bankruptcy filed in this Court on June 26, 1979 [2]. The Trustee does not dispute the validity of the debt. Rather, pursuant to Section 67a of the Bankruptcy Act, the Trustee seeks to avoid any lien on the debtor's property created thereby on the basis that said lien did not arise until June 5, 1979 which is less than four months prior to the filing of the petition and thus within the period of avoidability by the Trustee [3].

---

1. Bartl, who was Receiver for Claxton, III at the inception of this Complaint is now Trustee in Bankruptcy of the estate of Claxton, III.

2. Claxton, III contested the involuntary petition. Following extensive hearings, the Court entered an order of adjudication on March 21, 1980.

3. The bankruptcy petition against Claxton, III was filed prior to the October 1, 1979 effective date of the Bankruptcy Code, the current Title

Bankruptcy Act of 1898, § 67a; 11 U.S.C. § 107a (repealed) (cited hereafter as "Bankruptcy Act").

Section 67a(1) provides that:

(1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent. . . .

Bankruptcy Act § 67a(1). It is clear that the rendition of a judgment is a "legal proceeding" within the meaning of Section 67a(1). *See, Matter of Russo,* 18 B.R. 257 (Bkrtcy.E.D.N.Y.1982); *Matter of Brisbane,* 2 B.R. 636 (Bkrtcy.E.D.Va.1980). The record is quite clear that both the Pennsylvania judgment and the Virginia judgment were obtained pursuant to legal or equitable process as required by Section 67a.

In order for the Trustee to avoid a lien under Section 67a, he must establish that said lien was acquired within four months prior to the initiation of the bankruptcy proceeding. To determine when the judgment held by the defendant became a lien, the Court must look to Virginia law. As Collier explains:

A judgment . . . is often not a lien *ex proprio vigore.* Until it becomes such, as by docketing in a register's office, it is not affected by this subsection [Section 67a], notwithstanding the use of the word 'judgment' in the first clause [of Section 67a].

4 *Collier on Bankruptcy* (14th ed.), ¶ 67.08, p. 119 (1978).

Under Virginia law, Section 8.01–458 of the Virginia Code governs the time at or from which a judgment becomes a lien on real property. This section provides, in pertinent part:

Every judgment for money rendered in this Commonwealth by any state or federal court . . . shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment lien docket in the clerk's office of the county or city where such land is situated. . . .

1950 Code of Virginia § 8.01–458 (1977 Repl. vol.). The requirement of recording or docketing to convert a judgment into a judgment lien has long been acknowledged by Virginia's courts. *See, Ryan v. Kanawha Valley Bank,* 71 F. 912 (4th Cir.1895); *Hill v. Rixey,* 67 Va. (26 Gratt.) 72 (1875). Thus, docketing is a necessary prerequisite to the validity of a judgment lien[4]. *Matter of Brisbane, supra.*

Here, docketing cannot have occurred prior to June 5, 1979, the date of the Virginia judgment. Any lien thus pre-dated the June 26, 1979 filing of the bankruptcy by no more than 21 days, bringing it well within the four month period of avoidability by the Trustee in Bankruptcy.

For the lien to be avoidable, however, it must have been obtained while the debtor was insolvent. The Bankruptcy Act provides that a person shall be deemed insolvent whenever the aggregate of his property, exclusive of any property he may have fraudulently conveyed, "shall not at a fair valuation be sufficient in amount to pay his debts." Bankruptcy Act § 1(19).

Claxton, III was adjudicated a bankrupt on March 21, 1980. Adjudication alone, however, is not conclusive of insolvency. *Gratiot County State Bank v. Johnson,* 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1919).

11 of the United States Code. Accordingly, this case continues to be governed by the former Bankruptcy Act of 1898. (Act of November 6, 1978, PL 95–598, Title IV § 403(a), 92 Stat. 2683.)

4. There is no evidence in this case to show when, if ever, Weinberger & Co. docketed its judgment. The only documents presented are copies of the Pennsylvania and Virginia judgments. The Trustee in his Complaint, however, admits to docketing. Accordingly, the Court will consider the issues herein as if the judgment had been docketed, and thus became a lien on the date of entry of the judgment, June 5, 1979.

It is, however, evidence of insolvency to be considered together with such testimony and documents as the Trustee may present. In this case, Claxton, III resisted the involuntary petition and adjudication resulted only after extensive hearings. Adjudication here is thus more persuasive than if the petition had been voluntary or the matter uncontested.

In addition, the Trustee testified that his investigation of the assets listed in the bankrupt's schedules indicated that these were uncollectible except for a parcel of real property located in McLean, Virginia [5]. A major component of the bankrupt's claimed personalty consisted of shares in the Watkins Corporation ("Watkins") of which Claxton, III had been founder, director and chief operating officer. Samuel F. Neel, chairman of the board of Watkins, testified that on April 20, 1979 the corporation had transferred substantially all of Claxton, III's holdings to third parties pursuant to other litigation. The transferred shares represented approximately 85 percent of the corporation's stock. Claxton, III subsequently acquired another, smaller block of shares, but the date of transfer on the corporation's books is uncertain. Regardless of whether Claxton, III held any Watkins stock on June 5, 1979, Watkins had filed a petition in bankruptcy on May 10, 1979, and Neel testified that the corporation's stock was "absolutely worthless" [6].

During the month of May 1979, moreover, Claxton, III had executed a series of deeds of trust against his real property. These actions of the bankrupt brought the total of the encumbrances on the property to $820,000.00, leaving no equity to be considered in determining the bankrupt's assets on the date of entry of the judgment at issue [7].

Claxton, III acknowledged liabilities of $347,438.70 in his schedules filed with this Court and admitted by stipulation as evidence in this proceeding. In addition, Neel testified that Watkins had unpaid withholding tax liabilities in excess of $1.6-million for much of which Claxton, III, as chief operating officer, potentially was personally liable. Neel testified further that Claxton, III owed Watkins $900,000.00 which he had withdrawn from the corporation. Neel testified also that Claxton, III had personally guaranteed a number of the corporation's debts, including those to its franchisor and its equipment lessor. At the time Watkins filed its petition in bankruptcy, Neel testified the corporation was in default on all of these personally-guaranteed obligations.

■ Insolvency may, and often must, be proved by other facts from which the ultimate fact of insolvency may be presumed or inferred. *In re Entertainment Incorporated*, 375 F.Supp. 390, 394 (E.D.Va.1974) (and cases cited therein). When the date is near and no change in circumstances is shown, the Court may infer insolvency as of the relevant date. *In re Great Western Biscuit Co.*, 85 F.Supp. 314, 315 (S.D.Cal.1949).

---

5. The Trustee was unable to undertake this investigation until the summer of 1980 due to the lengthy adjudication proceedings. The Trustee testified, however, that he evaluated the bankrupt's assets with reference to the petition date of June 26, 1979.

6. This opinion is not vitiated by Neel's sale of his own stock for $50,000.00. The "insider" status of the purchaser, who was the bankrupt's father, raises a strong inference that the transaction was not at arm's length.

7. Several of said deeds of trust are the subjects of fraudulent conveyance actions by the Trustee. Pursuant to the exclusion of fraudulently-transferred property from aggregate assets under Section 1(19), however, any recovery by the Trustee would not affect the Court's determination on the issue of insolvency. *See,*

Bankruptcy Act § 1(19). At the time Claxton, III made the fourth, fifth and sixth deeds of trust to the property he had entered into a consent decree with Classic Homes, Inc. in the course of legal proceedings relating to a sale of part of the property to Classic Homes. Under the terms of the consent decree, Claxton, III executed an escrow deed to the property. Classic Homes, Inc., also pursuant to the consent decree, had the right to record this deed if Claxton, III encumbered the property for more than $400,000.00. Upon discovering that the assorted deeds of trust had reached a total of $820,000.00, Classic Homes recorded its escrow deed on May 22, 1979. Accordingly, the Court accepts the $820,000.00 figure as the fair market value of the property.

Accordingly, based upon the testimony and documentary evidence adduced at trial and summarized above, the Court finds that Claxton, III was insolvent on June 5, 1979, the date of entry of the Virginia judgment in favor of defendant Weinberger & Co.

The Court notes that at the time of entry of defendant's judgment, Claxton, III no longer held title to any real property. Claxton, III having breached the terms of a consent decree of the Fairfax County Circuit Court, the plaintiff in the state court action, Classic Homes, Inc. had exercised its rights under the decree and on May 22, 1979 recorded an escrow deed to the property. See footnote 7 *supra.* Section 8.01–458, however, does not restrict operation of a judgment lien to property held by the judgment debtor at the time the lien arises. Rather, a properly docketed judgment lien will attach to after-acquired real estate as well. 1950 Code of Virginia § 8.01–458 (1977 Repl. vol.). In addition, under Virginia law, such a judgment attaches also to property which the judgment debtor has conveyed away in fraud of the judgment creditor. *Tucker v. Foster,* 154 Va. 182, 152 S.E. 376 (1930).

In the course of the Claxton, III bankruptcy case, the Trustee already has avoided as fraudulent the deed of the property to Classic Homes, Inc. as well as two trustee's deeds executed following foreclosure sales held in August and September of 1979. *See, Matter of Claxton,* 30 B.R. 199 (1983). The effect of those proceedings has been to restore title to the bankrupt, bring the property into the bankruptcy estate, and, by operation of law pursuant to Section 70a of the Bankruptcy Act, vest said title in the Trustee in Bankruptcy. Bankruptcy Act § 70a. Thus, if the June 5, 1979 judgment ever was docketed, it could have become a lien upon the McLean property either on the basis of the fraudulent conveyance to Classic or the constructive re-acquisition of title through the actions of the Trustee in Bankruptcy.

Assuming that the judgment in favor of G. Weinberger & Co. became a valid lien which has attached to the property, the Court finds that said lien was obtained within the four months prior to the filing of the bankruptcy petition while Claxton, III was insolvent. Accordingly, any said lien is null and void *ab initio* under the provisions of Section 67a of the Bankruptcy Act.

An appropriate Order will enter.